SEIFERT *v.* KEATING.

1. EQUITY—SERVICE OF PROCESS—FINDING OF TRIAL COURT—EVIDENCE.

Trial court's finding that proper service had been made of summons and bill of complaint to impress a trust upon property to the extent of a 1/2 interest therein, which plaintiff and defendant had inherited from their intestate parents, is not disturbed under record showing that extensive testimony had been taken upon such issue.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 19 Am Jur, Equity §§ 207, 209.
[2, 3] 3 Am Jur, Appeal and Error § 764 *et seq.*
[4, 5, 9] 19 Am Jur, Equity §§ 359, 363.
[6] 19 Am Jur, Equity § 451.
[8] 2 Am Jur, Appeal and Error § 96.

2. APPEAL AND ERROR—IRREGULARITIES—QUESTIONS REVIEWABLE.

Irregularities in the course of a chancery suit ending in a default decree, which were urged in the trial court but not argued on appeal are not discussed by Supreme Court.

3. SAME—STATEMENT OF QUESTIONS INVOLVED—BRIEF.

Matters discussed in a brief on appeal should be discussed therein in the same order as they appear in the statement of questions involved (Court Rule No 67 [1945]).

4. EQUITY—SETTING ASIDE DEFAULT—DISCRETION OF COURT—IRREGULARITIES—DEFENSES.

The matter of setting aside a default rests primarily in the discretion of the trial court, both as to irregularities urged and the merits of the defense tendered (Court Rule No 28, § 4 [1945]).

5. SAME—SETTING ASIDE DEFAULT—AFFIDAVIT OF NONMILITARY STATUS—MEMBER OF RELIGIOUS ORDER.

There was no irregularity in the entry of a decree upon default of defendant without the filing of an affidavit as to his nonmilitary status, which justified the setting aside the default, where testimony taken on his motion to set aside, as well as the sworn pleadings, show he was a member of a religious order (Court Rule No 28, § 4 [1945]).

6. SAME—RELIEF.

A court of equity molds its relief according to the character of the case.

7. SAME—LIENS—IMPRESSING A TRUST.

A lien on property is germane to the issues presented by a bill to impress a trust upon the property.

8. APPEAL AND ERROR—SETTING ASIDE DEFAULT—DISCRETION OF COURT.

The action of a trial court taken upon a motion to set aside a default will not be interfered with on appeal unless the discretion lodged in the trial court is clearly shown to have been abused (Court Rule No 28, § 4 [1945]).

9. EQUITY—SETTING ASIDE DEFAULT—DUE PROCESS—DEFENSES—PREJUDICE—DISCRETION OF COURT.

Decree whereby brother and sister share substantially equally in property left them by their intestate parents is not set aside on defendant brother's motion, after entry of default against him, where record as a whole makes it clear there was no denial of due process and there is much doubt as to the

defense tendered, no prejudice has been suffered nor abuse of discretion shown (CL 1948, § 616.5; Court Rule No 28, § 4 [1945]).

Appeal from Wayne; Culehan (Miles N.), J. Submitted October 7, 1955. (Docket No. 51, Calendar No. 46,506.) Decided December 28, 1955. Rehearing denied March 1, 1956.

Bill by Alice Keating Seifert against Daniel L. Keating, individually and as administrator of the estates of Anna M. Keating and Eugene M. Keating, deceased, to impress trust on properties secured by fraud, for accounting and other relief. After default decree for plaintiff, defendant moved to set aside. Motion denied. Defendant appeals. Affirmed.

*William Henry Gallagher* (*Robert J. Kelly,* of counsel), for plaintiff.

*Samuel H. Rubin* (*Morton C. Goldberg* and *Phyllis Rubin,* of counsel), for defendant.

SMITH, J. We are here concerned with a default decree. The appellant wishes it vacated. The trial court's order denied appellant's motion to set aside the default and the decree based thereon.

The parties involved are brother and sister. They are the only surviving children of their deceased parents. The defendant is, or has been for upwards of 26 years, a member of a religious order. During the lifetime of the parents, all parties apparently enjoyed a closely-knit family relationship, After the death of the parents in the fall of 1953, the children's difficulties began. The trouble concerned the property and money of the old people. The brother, defendant herein, assumed its custody and control,

and upon petition to the probate court was appointed administrator of his parents' respective estates. In his petitions for administration he listed himself as the sole heir-at-law of his parents, who had left no last will and testament. Further comment as to the conduct of the defendant would serve no justifiable purpose.

On September 17, 1954, plaintiff filed a bill of complaint against defendant, individually, and as administrator of their parents' estates, alleging in substance that the defendant, by virtue of his professional position, while enjoying a position of special trust and confidence, exerted undue influence upon the parents and induced them "to transfer to him substantially all of their property and assets upon the promise and representation of the defendant that he would give and pay to plaintiff more than 1/2 of the said parents' property and assets upon their deaths." She prayed that the court by its decree impress a trust upon the real and personal property in favor of plaintiff, to the extent of a 1/2 interest, and that defendant be decreed to specifically perform his promise to share the property equally. In addition (having alleged that defendant had rented the 2-family flat in which her parents had lived) she asked for an accounting of the rents, and the property received by the defendant from the parents, and that defendant be restrained during the pendency of the suit from disposing of, or encumbering, the real property.

Personal service of summons and bill of complaint was assertedly made by one Angeline Kelly on the defendant on October 18, 1954. An order of default was filed November 5, 1954. The matter came on for hearing *pro confesso* on November 18, 1954, at which time the court heard testimony and took proofs in support of the allegations of plaintiff's bill of complaint, at the conclusion of which the court directed

plaintiff's counsel to "bring it (the decree) in when you get it prepared." On the following day the decree was entered awarding plaintiff the sum of $11,-857.14, plus rentals due her, to be determined by an accounting thereof, together with an undivided 1/2 interest in the real estate in question. It was further ordered that plaintiff have a lien upon the defendant's undivided 1/2 interest in the real estate as security for the payment of the sum aforesaid, and a sale of defendant's interest was ordered if, after 30 days, payment had not been made. The matter of the accounting was referred to the circuit court commissioner to determine the amount owed to plaintiff for rentals collected on the real estate. A proof of service of the decree was filed on December 15, 1954, which disclosed that personal service of the decree could not be made and that service by registered mail had twice been attempted, but in each case the envelope returned with the notation "refused."

On December 1, 1954, plaintiff garnished defendant's bank account at the Detroit Bank, defendant having been notified of the garnishment by the bank, came into court for the first time on January 5, 1955. He filed at once a motion to set aside the default, and the decree based thereon, and proffered a sworn answer to plaintiff's bill of complaint. The affidavit attached to the motion to vacate the default set up a lack of service of process and other matters which will be referred to as necessary. This motion was later amended to add:

"1. That the default was irregularly entered, in that no proof of service upon all the defendants appears on record.

"2. Because the decree based upon said default was improperly entered, in that no military affidavit was filed to take a decree *pro confesso*, as required by Wayne local rule, part 1, Rule 24 * * *. (CL

1948, § 32.53 [Stat Ann § 4.644] 50 USCA App §§ 501–585)."

A hearing on defendant's motion was had on January 19, 1955, at which time testimony was heard and proofs taken. At the conclusion thereof the trial judge denied defendant's motion to set aside the default. Plaintiff moved on January 25, 1955, to reopen the hearing on defendant's motion to set aside the default and further testimony and proofs were taken on February 14, 1955, whereupon the court again denied defendant's motion. On February 18, 1955, the court entered a written order denying defendant's motion to set aside the default, and the decree based thereon. It also entered a written order that "an order *nunc pro tunc* be entered as of November 18, 1954, directing the entry of a decree in this court and cause." (This decree had been filed on November 19, 1954, the day following the hearing *pro confesso,* pursuant to the court's order from the bench to "bring it in when you get it prepared.") In addition it provided that plaintiff might "file the attached nonmilitary affidavit *nunc pro tunc* as of November 18, 1954." Defendant has taken a general appeal from both of these orders.

We turn to allegations of error. In the defendant's affidavit in support of his motion to set aside the default, and the decree based thereon, he counted heavily upon the allegation that he, in his own words, "was never served with any summons, bill of complaint or restraining order on October 18, 1954, nor was there exhibited to him on said day and at the same time the original of the said summons with the seal of the court impressed thereon, nor was he so served with said documents at any time."

In his sworn answer, filed at the same time, he asserts that "during the course of these proceedings" he was in New Orleans, Louisiana. An issue, then,

was tendered, going to the jurisdiction of the court over the person of the defendant. Extensive testimony was taken thereon and it comprises much, if not most, of the record before us. We will not summarize. The record discloses variances so marked that they cannot reasonably be said to have resulted from inadvertence or confusion. The trial court reached a conclusion that proper service had been made. We see no ground for disturbing his conclusions.

Appellant, however, has additional strings to his bow. He now tells us that "whether defendant was served or not, to us is of little moment on this appeal." He then points to a number of asserted irregularities, some of which we will consider, others of which, urged in the trial court, are not argued to us on appeal. We will note, in passing, that appellant has not complied with Michigan Court Rule No 67 (1945). He has stated the questions involved but has not used and discussed them "in the same order as topical subheadings throughout the 'argument'." Our consideration in this instance of the narrative-type argument should not be taken as precedent.

The relief sought by appellant, from a default, rests primarily in the discretion of the trial court, both as to irregularities urged and the merits of the defense tendered. Much depends on the facts and circumstances peculiar to each case. The responsibility of the trial court is made clear by Michigan Court Rule No 28, § 4 (1945):

"Any order entered under this rule may be set aside on special motion for cause shown, in the discretion of the court, on terms."

In this Court, as below, defendant urges that the failure of plaintiff to file a nonmilitary affidavit prior to the entry of the *pro confesso* decree was a

flagrant irregularity, and that in its absence "the case was not in condition for default, nor in condition to be heard." Part 1, Rule No 24 of the Wayne county circuit court provides as follows:

"In accordance with the provisions of * * * (section 53 of PA 1919, No 84, as amended by PA 1937, No 239 [CL 1948, § 32.53 (Stat Ann 1952 Rev § 4.644)]), and the soldiers' and sailors' civil relief act of 1940, effective October 17, 1940, nonmilitary affidavits shall be filed by the plaintiff before entering any judgment or decree in all actions and proceedings in which there has been no appearance by a defendant. Such affidavits must be executed not more than 3 days before the entry of any judgment or decree may be filed with the court clerk at the time of hearing or trial. In divorce cases, such affidavits must bear the approval of the friend of the court as to their sufficiency."

The Michigan statute cited makes no reference to the affidavit, hence, we turn to the Federal act (50 USCA App § 520[1]):

"If an affidavit is not filed showing that the defendant is not in the military service, no judgment shall be entered without first securing an order of the court directing such entry."

In the case before us it appeared with reasonable clarity from the testimony taken, as well as the sworn pleadings before the court, that defendant was a member of a religious order and that he was not in the military service. The court thereupon directed the entry of the decree. We thus have an order of the court with respect thereto, there was no irregularity involved, and we do not rule either upon the propriety of an order *nunc pro tunc* to supply an instrument inadvertently omitted, or upon the question of whether only a serviceman, or woman, actually prejudiced by the lack of the affidavit, can

move to have the decree against him reopened and be let in to defend, or whether it is a rigid *sine qua non,* available to the public generally, regardless of service affiliation and regardless of prejudice or injury. See, generally, *Bell* v. *Niven,* 225 NC 395 (35 SE2d 182); *Commercial Credit Corp.* v. *Smith,* 143 Tex 612 (187 SW2d 363); *Hynds* v. *City of Ada, ex rel. Mitchell,* 195 Okla 465 (158 P2d 907).

It is also urged upon us that the court had no jurisdiction to decree a lien on 1/2 of defendant's property on the ground that the bill of complaint did not specifically pray for such. The point is without merit. A court of equity molds its relief according to the character of the case and it cannot reasonably be said that a lien on property is not germane to the issues presented by a bill praying that property be impressed with a trust. *Long* v. *Earle,* 277 Mich 505; *Swan* v. *Ispas,* 325 Mich 39.

Other issues raised do not warrant discussion. As we said in *Paynton* v. *Paynton,* 194 Mich 504, 507:

"The action of the court upon such an application as this is largely a matter of discretion; and such discretion will not be interfered with on appeal unless clearly shown to have been abused."

No such abuse appears. The record as a whole makes clear that there was no denial of due process and we have the most serious misgivings as to the merits of the defense tendered. We are, moreover, ever mindful of the statutory precept that no default shall be reversed for informality or negligence by reason of which prejudice shall not have been suffered. CL 1948, § 616.5 (Stat Ann § 27.842). The result of the action of this Court, and the trial court, is that brother and sister share approximately equally in the estate of their deceased parents. Preju-

dice is not patent. Abuse is not shown. The trial chancellor's direction we do not disturb.

Affirmed. Costs to appellee.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.