DART v DART

Docket No. 193786. Submitted May 6, 1997, at Lansing. Decided June 10, 1997, at 9:25 A.M. Leave to appeal sought.

Katina E. Dart brought an action for divorce from Robert C. Dart in the Ingham Circuit Court four days after Mr. Dart brought an action for divorce from Mrs. Dart in a court in England. The English court eventually granted a divorce, divided the marital property, and ordered Mr. Dart to pay child support for the parties' children. Mr. Dart moved in the Ingham Circuit Court for a stay or dismissal of the Michigan action, arguing that the English judgment was entitled to enforcement under the Uniform Foreign Money Judgments Recognition Act (UFMJRA), MCL 691.1151 *et seq.*; MSA 27.955(1) *et seq.*, and the principle of comity. The circuit court, William E. Collette, J., denied the motion. Mr. Dart appealed to the Michigan Court of Appeals by leave granted.

The Court of Appeals *held*:

1. The circuit court erred in ruling that the English judgment is not enforceable under the UFMJRA. Subject to exceptions provided in § 4 of the UFMJRA, a foreign judgment, including those for support in divorce or child custody matters, is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. Section 3 of the UFMJRA. To the extent that the English judgment awarded sums certain to Mrs. Dart, specifically the lump-sum award and child support, the judgment is conclusive. The exceptions under § 4(1)(a),(2)(c) of the UFMJRA for a foreign judgment rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law and for a foreign judgment based on a cause of action that is repugnant to the public policy of Michigan are not applicable to this case. It cannot reasonably be argued that Mrs. Dart was denied due process inasmuch as there is no evidence that the English tribunal and procedures were not impartial and inasmuch as Mrs. Dart was represented by counsel, was given an opportunity to be heard, and presented evidence on her own behalf. The factors that English judges take into consideration in dividing property in divorce cases are virtually identical to those considered by Michigan judges in dividing marital property. The fact that the English judgment can be appealed or modified does not render it a nonfinal

judgment that is unenforceable under the UFMJRA. The UFMJRA applies to any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal. Section 3 of the UFMJRA. The English judgment at issue is final under English law.

2. The circuit court erred in not dismissing the Michigan action on the basis of comity. Comity is the recognition of a judicial or legislative act of another nation that permits foreign judgments to be recognized in the United States. A foreign judgment should be accorded comity where, as here, the basic rudiments of due process were followed, the parties were present in court, and a hearing on the merits was held.

3. Res judicata bars the Michigan action. The English case was decided on the merits, the matter contested in the Michigan case was or could have been resolved in the English case, and both cases involve the same parties. Under the broad application of res judicata in Michigan, every claim arising out of the same transaction that the parties, exercising reasonable diligence, could have raised but did not are also barred.

Reversed.

*Williams, Schaefer, Ruby & Williams, P.C.* (by *John F. Schaefer* and *Mark A. Bank*), for the plaintiff.

*Clark Hill P.L.C.* (by *Hanley M. Gurwin, Amy A. Stawski,* and *Charles G. Goedert*), for the defendant.

Before: BANDSTRA, P.J., and GRIFFIN and FITZGERALD, JJ.

PER CURIAM. Defendant appeals by leave granted the order denying his motion to stay the proceedings or dismiss this divorce action filed by plaintiff. We reverse.

Plaintiff and defendant were married in 1980 and were residents of Okemos, Michigan, until 1993, when they moved to England. The parties had two children, William Charles Dart, born January 23, 1983, and Arianna Constance Dart, born November 12, 1985. Defendant is the son of the founder of Dart Container

Corporation, one of the largest family-controlled businesses in the United States. The move to England made possible a September 1993 transfer of several hundred million dollars to defendant from family trusts. For the transfer to occur, defendant had to renounce his United States citizenship.

The parties jointly purchased a house near London and enrolled the children in school. The marriage eventually foundered, and defendant filed for divorce in England on February 3, 1995. Plaintiff, through her attorneys, filed a similar suit in Michigan in the Ingham Circuit Court four days later.[1] The parties remained in England until a consent order was entered in the English court on June 9, 1995, allowing plaintiff to return with the two children to Michigan.

On March 21, 1995, defendant moved for summary disposition pursuant to MCR 2.116(C)(4) and (6) in the Ingham Circuit Court on the bases of lack of jurisdiction and pendency of a prior proceeding. Following a hearing on the matter, the circuit court determined that jurisdiction was proper in Michigan and assumed jurisdiction over the two children and the divorce proceeding. The court reserved the issue of jurisdiction over the parties' property.

Plaintiff also brought a jurisdictional challenge in the English court. The English court determined that jurisdiction was proper in England in a judgment entered on June 13, 1995. Following entry of this order, defendant moved in the Ingham Circuit Court to defer jurisdiction on the basis of forum non conveniens. After a hearing on August 8, 1995, the circuit

---

[1] Jurisdiction based on domicile and residence in Michigan is not an issue raised in this appeal.

court denied the motion and assumed jurisdiction over the parties' property.

Both suits proceeded. On October 27, 1995, a "decree absolute" of divorce was entered in the English court. This was followed by a seven-day trial in March 1996 in which plaintiff filed an answer claiming the "full range of financial ancillary relief available to a wife under the Matrimonial Causes Act [of] 1973." Both sides presented expert witnesses who testified regarding the parties' assets and plaintiff's reasonable needs. On March 21, 1996, the English court issued a lengthy opinion in which it determined defendant's total net worth to be "about £400 million."[2] The court awarded plaintiff approximately $14.3 million and the house in Okemos and its contents, which the parties agreed were worth approximately $1.5 million. Plaintiff was also awarded four paintings and her jewelry. The court also awarded child support in the amount of $95,400 a year for both children. Defendant was awarded four automobiles and the balance of the marital estate.

On March 29, 1996, defendant moved to stay or dismiss the Ingham Circuit Court proceedings, arguing that the English judgment was entitled to enforcement under the Uniform Foreign Money Judgments Recognition Act (UFMJRA), MCL 691.1151 *et seq.*; MSA 27.955(1) *et seq.*, and the principle of comity. Defendant also argued at the hearing on April 8, 1996, that the English judgment was entitled to res judicata effect. The circuit court denied the motion, finding that the English judgment was not entitled to recognition under the UFMJRA or the principle of comity

---

[2] The exchange rate is approximately $1.59 to £1.

because the English system of law was repugnant to the public policy of Michigan and because the English decision violated plaintiff's "right to have a fair and equitable distribution of property." Defendant's application for leave to appeal the circuit court decision was granted by this Court on April 10, 1996.

I

Defendant first claims that the Ingham Circuit Court erred in determining that the provisions of the English judgment were not enforceable under the UFM-JRA, which states that, except as provided in MCL 691.1154; MSA 27.955(4), "a foreign judgment . . . is conclusive between the parties *to the extent that it grants or denies recovery of a sum of money.* The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." (Emphasis added.) MCL 691.1153; MSA 27.955(3). In 1987, the definition of "foreign judgment" in the act was amended to expressly include judgments for support in divorce or child custody matters. 1987 PA 98, § 1, codified at MCL 691.1151; MSA 27.955(1).[3] The scope of this amended definition is a matter of first impression. Defendant argues that the entire judgment, including the property division as well as the child support and lump-sum awards, falls within the ambit of the amended definition and should be enforced pursuant to the UFMJRA.

To the extent that the English judgment awarded sums certain to plaintiff, specifically the lump-sum

---

[3] Before this amendment, foreign judgments providing for alimony or child support could be enforced under the principle of comity. See discussion of issue II.

award and child support, the judgment is conclusive under § 3 regardless of whether the lump sum was part of the property division. Therefore, the provisions of the English judgment relating to payment of sums certain are enforceable under the UFMJRA and the trial court erred in refusing to recognize the applicability of the statute.[4]

Plaintiff argues that the Ingham Circuit Court correctly held that the judgment need not be recognized under the UFMJRA because the English system is repugnant to the public policy of this state because of its treatment of women as "second-class citizens," its provision for only limited discovery, its failure to take the wife's contribution to the family into account, and its failure to try the issue of fault. MCL 691.1154(1)(a); MSA 27.955(4)(1)(a). A foreign judgment is not conclusive if it was rendered under a system that does not provide impartial tribunals or procedures compatible with due process of law. Here, however, it cannot reasonably be argued that plaintiff was denied due process because she was represented by counsel, given an opportunity to be heard, and presented evidence on her own behalf. Although the circuit court opined that the English judge was not impartial, a review of the lengthy opinion of the English judge fails to support a finding of bias. Further, had the issue of fault been raised, it would not have benefited plaintiff, who admitted that her continuing infidelity was the cause of the marital breakdown. Consequently, no evidence that plaintiff was

---

[4] With regard to the property distribution provisions of the judgment, see issue II.

prejudiced by an unfair tribunal or proceeding is present.

MCL 691.1154(2)(c); MSA 27.955(4)(2)(c) provides that a foreign judgment need not be recognized if the cause of action on which the judgment is based is repugnant to the public policy of this state, which is fixed by constitution, statute, and case law. *Martino v Cottman Transmission Systems, Inc*, 218 Mich App 54, 59; 554 NW2d 17 (1996). However, the factors that judges take into consideration in property division in English divorce cases under § 25 of the Matrimonial Causes Act of 1973 are virtually identical to the factors identified by our Supreme Court in *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).[5] That different outcomes might obtain under virtually identical standards is a result of the exercise of the individual judge's discretion. While the Ingham circuit judge might have awarded plaintiff more of the marital estate than did the English judge, that fact alone does not render the English judgment repugnant to the public policy of the state where the children are adequately provided for and plaintiff has the means to maintain a lifestyle similar to the one she enjoyed throughout the greater part of the marriage. Cf. *Bessmertnaja v Schwager*, 191 Mich App 151, 156-157; 477 NW2d 126 (1991) (declining to recognize a Swedish

---

[5] Pursuant to *Sparks*, these factors include the duration of the marriage, the contributions of the parties to the marital estate, the age and health of the parties, the life status of the parties, including their respective necessities and circumstances, the parties' respective earning abilities, their past relations and conduct, and general principles of equity. Under the Matrimonial Causes Act of 1973, § 25(2), the court is directed to consider the parties' income, earning capacity, and financial resources, financial needs and obligations, standard of living, age and duration of the marriage, physical or mental disabilities, contributions to the welfare of the family, and conduct.

paternity judgment that failed to order support for an illegitimate child).

Lastly, plaintiff argues that the English judgment is not a final judgment because under English law, "all orders made in matrimonial proceedings concerning financial provision are interlocutory and not final." However, MCL 691.1152; MSA 27.955(2) disposes of this argument because it expressly states that the UFM-JRA applies to "any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." The language cited by plaintiff refers only to "orders . . . concerning financial support"; it undoubtedly means that the orders for child support and alimony are subject to subsequent modification, just as they are in this country. See MCL 552.603; MSA 25.164(3). The fact that such judgments are subject to modification does not affect their finality for purposes of the UFMJRA. See MCL 552.603(2); MSA 25.164(3)(2); *Langford v Langford*, 196 Mich App 297, 299; 492 NW2d 524 (1992). Further, looking to English law to determine the finality of the English judgment, see *Growe v Growe*, 2 Mich App 25, 33-35; 138 NW2d 537 (1965), according to Halsbury's Laws of England, "a judgment or order which determines the principal matter in question is termed 'final.' . . . A final order is none the less final by reason that it is subject to appeal, and a judgment may be final even though it directs inquiries, or deals with costs only, or is made on an interlocutory application, or reserves liberty to apply." 26 Halsbury's Laws of England (4th ed), § 505

(1979). Consequently, the English judgment is a final order.[6]

II

Defendant next contends that the Ingham Circuit Court erred in failing to dismiss this action on the basis of the principle of comity. The circuit court determined that the rudiments of due process had not been met and that the result reached in the English judgment was contrary to the public policy of this state. A trial court's ruling on a motion for dismissal is reviewed for clear error. *Hoffman v Garden City Hosp*, 115 Mich App 773, 779-780; 321 NW2d 810 (1982). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made. *Richmond Twp v Erbes*, 195 Mich App 210, 224; 489 NW2d 504 (1992).

Comity is the recognition of a judicial or legislative act of another nation that permits foreign judgments to be recognized in this country. *Bang v Park*, 116 Mich App 34, 39; 321 NW2d 831 (1982). In *Growe*, this Court held that a Canadian alimony judgment could be enforced in Michigan under principles of comity, stating:

> Faced as we are with a judgment from a court of competent jurisdiction which lies but the breadth of a river from the instant court, closer, indeed, than most of the remaining 49 states, and a court which draws its concepts of law from

---

[6] This is consistent with Michigan law, which provides that property settlement provisions of a divorce judgment are final and, as a general rule, cannot be modified. *Colestock v Colestock*, 135 Mich App 393, 397; 354 NW2d 354 (1984). Additionally, the English judgment has been affirmed on appeal.

the same roots as ours, comity supplies a rational and well-founded reason for affording relief to this plaintiff. Any appellate court faced with the compelling elements this Court finds before it would be derelict if it did not examine minutely this burgeoning concept of jurisprudence. [*Id.* at 32; see also *Bang, supra* at 38-39.]

In *Growe*, this Court indicated that the factors to be considered in determining whether a foreign judgment should be accorded comity were "whether or not the basic rudiments of due process were followed, whether the parties were present in court, [and] whether a hearing on the merits was held." 2 Mich App 33. The *Growe* decision was held to represent prevailing Michigan law in *Bang, supra* at 40.

Contrary to the Ingham Circuit Court's findings, it is evident from the judgment rendered in England that plaintiff had a fair hearing on the merits and that she was present, was represented by counsel, and actively participated in the proceeding. Therefore, to the extent that the property distribution provisions of the English judgment are not encompassed by the UFMJRA, the decision is entitled to enforcement under the principle of comity because there is no evidence that it is contrary to the public policy of this state.[7]

Plaintiff also contends, once again, that "under English law all orders made in matrimonial proceedings concerning financial provision are interlocutory and not final." For the reasons above, we reject this argument with respect to comity as well.

---

[7] See issue I.

III

Defendant lastly contends that plaintiff's suit is barred by res judicata. Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical. *Eaton Co Bd of Rd Comm'rs v Schultz*, 205 Mich App 371, 375; 521 NW2d 847 (1994). A second action is barred when (1) the first action was decided on the merits; (2) the matter contested in the second action was or could have been resolved in the first; and (3) both actions involve the same parties or their privies. *Id.* at 375-376. Michigan has adopted a broad application of the doctrine of res judicata, barring not only claims actually litigated in the prior action, but every claim arising out of the same transaction that the parties, exercising reasonable diligence, could have raised but did not. *Gose v Monroe Auto Equipment Co*, 409 Mich 147, 160-163; 294 NW2d 165 (1980); *Sprague* v *Buhagiar*, 213 Mich App 310, 313; 539 NW2d 587 (1995).

Here, the Michigan action involves a divorce between the same parties with the same assets and the same children. Therefore, res judicata applies if the judgment is final and enforceable. Plaintiff raises two arguments: first, that the judgment was not entitled to be pleaded as res judicata because it was not final and, second, that the judgment is not preclusive because it does not address issues such as custody, visitation, pension rights, dower rights, or insurance or tax liabilities.

We have already determined that the English judgment is a final order. Further, the fact that the judgment does not address custody or visitation is not fatal to its preclusive effect. The Ingham Circuit Court

has jurisdiction over custody and visitation pursuant to the Uniform Child Custody Jurisdiction Act, MCL 600.653; MSA 27A.653. See *Braden v Braden,* 217 Mich App 331, 338-339; 551 NW2d 467 (1996). With regard to the other items referred to by plaintiff,[8] res judicata applies as a bar to every claim arising out of the same transaction that the parties, exercising reasonable diligence, could have raised but did not. *Gose, supra* at 160-163. Because these issues could have been raised before the English court, plaintiff's suit is barred by res judicata.

Reversed.

---

[8] That is, pension rights, dower rights, or insurance or tax liabilities.